COVERT *v.* TOWNSEND.

*(Supreme Court, General Term, Second Department.* May 14, 1888.)

1. EVIDENCE—HEARSAY—DECLARATIONS OF THIRD PARTY.

In an action for the conversion of stock alleged to have been left with defendant's deceased husband as security for notes made upon a loan procured by him from plaintiff for the owner of the stock, the examination of the owner in proceedings supplementary to execution under plaintiff's judgment on the notes, and his declarations, are inadmissible, as being hearsay and secondary evidence.

2. PRINCIPAL AND AGENT—CONVERSION BY AGENT—EVIDENCE.

Defendant's husband had procured a loan from plaintiff for one of his clients, for which he sent plaintiff the client's note. He had also, at various times, lent to this client money belonging to an estate of which he and his wife were executors; and after his death four certificates for 220 shares of ice company stock were found among the papers of the estate, so placed in connection with notes, receipts, and due-bills of the client as to indicate that they had been pledged as collateral to the loans for which they were given. The pledgeor paid this indebtedness, and the certificates were surrendered to him; nothing being said by him, and nothing being found among the papers, to indicate that these certificates had been pledged as as security for plaintiff's loan. Plaintiff and her sister testified that, both before and after the death of the executor, they had seen, among his papers, shares of ice company stock placed with a bond and mortgage, the bundle being marked as containing plaintiff's securities; but no such papers could be found among those of the the decedent, while the bond and mortgage were found at the residence of his former law partner. *Held,* that a verdict finding a conversion of the ice company stock in its surrender to the pledgeor is contrary to the evidence, which clearly shows that all of that stock was deposited as security only for the indebtedness of the estate.

Appeal from circuit court, Kings county; CALVIN E. PRATT, Justice.

Action by Kate Covert against Williemene Townsend for the conversion of certain shares of stock alleged to have been deposited with Blaize L. Harsell, the husband of defendant, since deceased, as collateral security on loans made by plaintiff and her sister to one Alfred Nelson on the procurement of Harsell; the notes given to plaintiff's sister upon the loans made by her having since been assigned to plaintiff. From a judgment in favor of plaintiff, and a motion denying a new trial, the defendant appeals.

*Thornton, Earl & Kiendl,* for appellant. *Edgar Bergen,* for respondent.

DYKMAN, J. This is an action for the wrongful conversion of 80 shares of the stock of the National Ice Company of New York, based upon the following facts: On the 3d day of January, 1880, the plaintiff made a loan to one Alfred Nelson of $2,000, for which she received his promissory note, payable on demand, to her own order, dated January 3, 1880. On the 11th day of March, 1880, Margaret E. Covert, the sister of the plaintiff, loaned to Alfred Nelson the sum of $200, for which she received his promissory note, payable in three months, to her own order, dated March 11, 1880. On the 17th day of April, 1880, Margaret E. Covert made another loan to Alfred Nelson of

$100, for which she received his promissory note dated April 17, 1880, payable to her order three months after date. These loans were all procured for Nelson by Blaize L. Harsell, who was his lawyer and personal friend. On the 6th day of January, 1880, Blaize L. Harsell wrote a letter to the plaintiff, which was received by her, of which the following is a copy: "JANUARY 6, 1880. *Miss Kate Covert:* Please find Mr. Nelson's note inclosed for $2,000, at 6 per cent. interest. While such note is good without any indorsement, I do not hesitate in adding my name to it. BLAIZE L. HARSELL." On the 25th day of April, 1880, Blaize L. Harsell also wrote a letter to Margaret E. Covert, which was received by her, of which the following is a copy: "APRIL 25, 1880. . *To Margaret E. Covert:* Please find inclosed notes of my friend Mr. Nelson for the sum of three hundred dollars. BLAIZE L. HARSELL. PRINCE & HARSELL." Blaize L. Harsell was the husband of the defendant, and he died in June, 1882, and he and the defendant were the executors of the last will and testament of Letitia A. Blackwell, deceased, and at various times between September, 1878, and October, 1880, Blaize L. Harsell loaned various sums of money to Alfred Nelson, for which he took the promissory notes of Nelson, payable to himself or order. After his death there was found among his effects a box marked, "Estate of Letitia A. Blackwell;" and within a week after his death the box was opened by Charles De Kay Townsend, then the counsel and now the husband of the defendant, and he found in the box several promissory notes and due-bills, amounting in the aggregate to $7,300, and four certificates of stock of the National Ice Company for 220 shares. There was a receipt for a temporary loan of $3,000, October 8, 1880; and in an envelope marked "Collateral for Loan of October 8, 1880," there was one certificate for 100 shares of the ice stock; with another certificate for 20 shares was a due-bill for $3,000; and with the two other certificates of 50 shares each there was a note for $2,500, a note for $1,000, a note for $500, and a note for $500, and a due-bill for $300,—all made by Nelson, and payable to his own order, or to the order of Harsell. One hundred and twenty shares of the ice stock was pledged by Nelson to Harsell for a note of $3,000, in October, 1880. The following paper was also found in the same box: "NEW YORK, October 24, 1879. *Alfred Nelson, Esq.*—DEAR SIR: Your notes to me for money loaned you, and which notes are now overdue, I should like to have paid. If, however, it should be inconvenient for you to pay the same, two points we want distinctly understood and agreed upon: (1) That the rate of interest be, and the same remain at, seven per cent. until the notes are paid; (2) that when it suits your convenience to pay the money, *i. e.*, the notes, you shall wait until, should that time not be convenient, we can otherwise satisfactorily invest the money, the interest to remain still at 7 per cent. Please let me have your answer in writing. Yours, very truly, BLAIZE L. HARSELL." "NEW YORK, October 24, 1879. I accept the above arrangement. ALFRED NELSON." The letter of Harsell was also found in the Blackwell letter copy. There was no claim that more than 220 shares of the ice stock was ever left with Harsell. Nothing was found in the box, or in the safe of Harsell, or among his papers, in relation to the loan of the plaintiff or her sister, or to indicate that any of the ice stock had ever been pledged or held as security for the payment of their notes, and there were no notes of Alfred Nelson among the papers of Harsell except those found in the tin box. On the 4th day of October, 1880, Nelson wrote to Harsell as follows: "NEW YORK, October 4, 1880. To DEAR BLAIZE: I have a $3,000 note to take up 8th inst., and have been relying on you to let me have the money. Security will be 120 shr., $50.00 ea., of ice stock, same as now, with note which was disct. for me at 6 per cent. by Lea Bk. 120, $50. ea., = $6,000. Ice Co. have no debts, and $100,000 in bank. *Entre nous.* I hope to see you to-morrow. ALFRED." And on the same day Nelson received the $3,000 from Harsell, and pledged the 120 shares as security for its payment. The two notes

of Margaret E. Covert were transferred to the plaintiff, and she recovered a judgment upon them, with her own note, against Nelson; and he was examined in proceedings supplementary to execution, and signed his deposition. After the death of Harsell, Nelson claimed the right to redeem the ice stock by the payment of his indebtedness to the Blackwell estate, without an intimation that any portion of it was held as security for his indebtedness to the plaintiff or her sister. He commenced negotiations with Townsend for the redemption of the stock in December, 1882, and paid him $2,500 on the Blackwell indebtedness, and received back his note for that amount, and 50 shares of ice stock; and in January, 1883, he paid $2,500, and received back some notes, and 50 shares of the ice stock; and in May, 1883, the final settlement was made, when all the old notes, and 120 shares of the ice stock was delivered to Nelson, and he gave a new note for the balance of his indebtedness to the Blackwell estate to the defendant for $2,400 and upwards, and redelivered to her 60 shares of the ice stock as security for the payment of that note. That delivery of the ice stock to Nelson is the conversion complained of in this action. The foregoing facts are disclosed by the record before us, and are entirely undisputed.

On the trial of the action at the circuit before a jury, the deposition of Nelson, on his examination in the supplementary proceedings, already mentioned, was offered in evidence by the plaintiff, and received, over the objection and exception of the defendant; and its reception was erroneous. Against the defendant it was hearsay and secondary. Nelson occupied no relation to the defendant which would render his declarations and admissions obligatory or binding upon her. He was a perfectly competent witness in the case; and, if a pledge or conversion of the stock was to be established against the defendant, it was her legal right to have it proved by common-law evidence. The same rule will condemn the admission in evidence of the subsequent declarations of Nelson to the plaintiff and her sister. Nelson was subsequently called as a witness for the plaintiff, and his testimony failed entirely to come up to the declarations he made in his deposition. On the contrary, he sustained well the theory of the defendant. The plaintiff and her sister both testified on the trial that they saw among Harsell's papers, both before and after his death, a bond and mortgage of Margaret E. Covert, and a note for $100, placed with ice stock, with a paper wrapped around the bundle, marked, "For Miss Covert's Securities, $4,000;" but neither of these papers were found among Harsell's papers or in his safe, and the bond and mortgage were found at the residence of Judge Prince. At the time the plaintiff claims to have seen these papers, she had received her own large note from Harsell, unaccompanied by any stock, or any memorandum to indicate the pledge of any stock as security, but accompanied by a letter which indicated plainly that there was no security, and no necessity for any, but that Harsell was willing to indorse the paper. So far as the testimony of the plaintiff and her sister tends to show a pledge of the ice stock as security for the payment of their notes, it is at war with the established and undisputed facts in the case, which prove beyond question that all of the 220 shares of the ice stock delivered by Nelson to Harsell were hypothecated and held as security for the payment of the indebtedness of Nelson to the Blackwell estate. Under that state of facts, therefore, Townsend, as the agent of the defendant, was compelled to deliver the stock to Nelson upon the payment of the Blackwell debt, and such delivery was not wrongful.

The verdict of the jury was therefore against the evidence, and the judgment and order appealed from should be reversed, and a new trial granted, with costs to abide the event.